### CHICAGO GRAIN DOOR CO. v. McGUIRE–CUMMINGS MFG. CO.

(Circuit Court of Appeals, Seventh Circuit. October 4, 1910.)

No. 1,648.

PATENTS (§ 328*)—INFRINGEMENT—BRACKET FOR CAR DOORS.

    The Hill patent, No. 527,792, for a bracket for car doors, fastened to the car body by a lag screw having its head countersunk in the bracket, so that it cannot be unscrewed except by rotating the bracket, which is prevented by the car door when in closed position, is not for a generic invention, in view of the prior art, but is limited to the specific method in which a previous concept is embodied. As so construed, *held* not infringed.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

Suit in equity by the Chicago Grain Door Company against the Mc-Guire-Cummings Manufacturing Company. Decree for defendant, and complainant appeals. Affirmed.

Otto Raymond Barnett, for appellant.

Charles K. Offield, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

GROSSCUP, Circuit Judge, delivered the opinion:

Experience has pointed out that thieves are much more likely *to* break open freight car doors, and steal the contents of the car, where

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the fact that the car has been broken open is not susceptible of quick discovery, than where it is capable of ready detection and discovery; for a quick discovery of the fact that the car has been broken open is followed by an immediate trailing of the thieves. The inventions involved in this suit, both the one relied upon by appellant, and the one used by appellee, were to expose to quick discovery (usually within a day or two at most), by the railway inspectors, the fact that the car had been opened up. And to this end, the purpose of the inventions was to so construct and apply a bracket which could not be removed and replaced while the car door was closed.

The common type of box car is provided on opposite sides, midway of its length, with doorways, through which freight is loaded and unloaded—the doors hung on rollers on an overhead track, sliding along outside of the car and overlapping it—as distinguished from a different type of car in which the doors slide into and fit flush in the doorway. To keep these doors from being swung outward at the bottom, metal brackets or keepers are provided, whereby the lower edge of the door is confined to the side of the car when in a closed position. And to prevent pilfering of the cars, prior to the conception of the idea which appellant's patent was intended to further, reliance was placed upon a locking of the forward edge of the door by means of a staple and interweaving wire or metal strip, the ends of the wire or metal strip being fastened together by a lead seal. With the ordinary bracket then employed, this use of a seal, and the notice that its breaking gave to the next inspector examining it, was avoided by simply taking out the lag screws with which the bracket was fastened, whereupon the door could be pried out sufficiently to permit of the entrance of a thief, and, the work of stealing accomplished, the bracket restored without any indication of its having been removed, or of the door having been opened. The Hill patent prevents this by so combining the car door bracket with the ordinary commercial form of lag screw, and with the car door itself, that so long as the car door is closed, the lag screws cannot be removed without first opening the door, which, of course, involves the breaking of the seal. The device is illustrated in the following cut:

and its operation is described in the patent as follows:

HILL THIEF PROOF BRACKET.

"In accordance with my invention, I so construct the bracket that after one of its retaining-screws has been partially placed in position, it is necessary to rotate the bracket with the screw, after the manner of a wrench, until the screw has been effectively driven home and the bracket secured to its proper operative position; the bracket being held in such position by the screw. It is obvious that, in order to remove a plate so secured to the car-body, it is necessary first to rotate the plate with the screw, in the opposite direction from that in which it was previously rotated, in order to effect its detachment, and it is also obvious that so long as the car-

door extends across such plate and in contact therewith, such reverse rotation of the bracket for the purpose of detachment is rendered impossible."

The claims are as follows:

"1. The combination with a sliding-door, of a bracket and an attaching-screw or bolt having non-rotative engagement with the bracket; said bracket having movable contact with a part of the structure in such manner as to prevent rotation of the bracket, substantially as set forth.

"2. The combination with a sliding-door, of a guide-bracket engaged, and held against rotation by the door and a retaining-screw or bolt having non-rotatable engagement with the bracket, substantially as and for the purpose described."

Before inquiring if appellee's bracket infringes this device, we must inquire what is the scope of the Hill patent. In the prior art is the Eubank patent, No. 512,467, illustrated as follows:

*Fig. 1.*

*INTEGRAL STUD*

*Fig. 3.*

*EUBANK BRACKET.*

*Fig. 4.*

*DETAILS OF*

*EUBANK'S INTEGRAL STUD.*

*Fig. 2.*

*CAR SILL*
*PREPARED TO RECEIVE*
*EUBANK BRACKET.*

Its purpose is described by the patentee (Eubank) as follows:

"It is well known that great loss is sustained continually by reason of the imperfect fastenings of car doors and that unauthorized persons by removing the nuts and bolts of the ordinary L-shaped guide that is universally employed may pry or spring one corner of the door a sufficient distance from the opening to give access thereto, and this may be accomplished without the breaking of the seal or otherwise giving evidence of the tampering by any external appearance of the car so that the loss is not discovered until the car has arrived at its destination and an inventory of its contents taken.

"The objects of my invention are to so construct the guides for the door that even though the bolts are removed yet it is impossible to remove the guide and open the door without a rupture of the seal."

It accomplishes this purpose by having, in the center of its rear side, an integral stud with inclined binding shoulders. These binding shoulders are placed at the rear end of the stud and arranged diametrically opposite to each other. An opening, of the same shape as the rear end of the stud, is made in the sill of the car, and in applying the bracket, it is turned at a right angle to its normal position when in use, so that the binding shoulders will pass through the grooves provided for in the socket or opening in the sill of the car. The bracket is then pushed backward, and when its flange is against the surface of the wall of the car, it is given a quarter turn, the inclined or binding shoulders cutting their way into the fiber of the wood and serving to draw the bracket snugly against the wall of the car. The bracket cannot now be drawn out again, except by rotating it back again so as to bring the binding shoulders of the stud into the grooves,—such rotation being prevented by the foot of the door when in a closed position. An inspection of the drawings and description of this patent show that

the difficulty that Hill intended to overcome was fully appreciated and overcome by Eubank, both patentees using the foot of the door to prevent the bracket from being rotated—Eubank utilizing a stud, with binding shoulders mounted on its rear end, forced into the grain of the wood; and Hill utilizing, to the same end, the ordinary form of commercial lag screw, with a square or polygonal head countersunk into the metal of the bracket. The Hill patent, therefore, is not generic, nor is it the first to use the foot of the door to prevent the bracket from being rotated. Its merit consists entirely in countersinking the bolt heads into the metal of the bracket in such a way, that for the last few turns of the bolt, in applying the bracket, the bracket itself can alone be used as the wrench for this purpose. The alleged infringing bracket is illustrated as follows:

and consists of two members; the first of which has a wide groove, longitudinally of its inner surface and in the center thereof, and is fastened to the body of the car by one or more screws of any suitable description. The second member consists of the usual L-shaped guide at its upper end, below and on each side of which are wings carrying small cap-plates, adapted to cover the heads of the screws in the first member when the whole is assembled and applied. At the lower end of the second member is a tongue, adapted to fit in the groove of the first member. In applying the bracket, the first member is fastened to the body of the car, usually by three screws of any suitable kind, and the tongue of the second member is inserted in the groove of the first member. When the second member is in place, as above stated, the cap-plates cover the heads of the screws of the first member, thereby preventing their removal without withdrawing the second member, which cannot be done while the car door is in a closed position with its lower edge resting upon the guide. This device cannot be employed as a wrench, and its nearest possible approach to the Hill patent is in the use of the cap-plates to prevent removal of the screws with which the first member is fastened to the body of the car. But we do not understand that there is any such patentable novelty in that concept, standing alone, that would entitle Hill to say that appellee had borrowed one of his ideas. Indeed, to prevent the removal of screws or bolts by these means is plainly obvious.

Proceeding on the idea, then, that Hill's patent is not for a generic invention, but is limited to the specific method in which a previous

concept is embodied, we think the alleged infringing device does not infringe.

The decree of the Circuit Court is affirmed.